BLACK, Judge.
 

 Following a September 1, 2007, incident where Stieh stabbed Daniel Conneally, Stieh was charged with aggravated battery. Stieh proceeded to trial and at the close of the State’s case and again at the close of his case, he moved for judgment of acquittal, arguing the State failed to present sufficient evidence to overcome his theory of self-defense. Both motions were denied, and Stieh was convicted. Because Stieh presented a prima facie case of self-defense and the State failed to prove beyond a reasonable doubt that he did not act in self-defense, the trial court should have granted Stieh’s second motion for judgment of acquittal. Accordingly, we reverse the judgment.
 

 The events in question occurred after four parties — Conneally, the victim; the victim’s girlfriend; Stieh, the appellant; and Jeffrey Flaherty, the appellant’s friend — engaged in a consensual sexual encounter. Conneally and his girlfriend were invited to join Stieh and Flaherty in the hotel room rented by Stieh. After the three men had sex with Conneall/s girlfriend, she and Conneally left the hotel. Shortly after leaving, the two realized their wallets were missing, and they returned to Stieh’s hotel room to search for them. Upon arriving, Conneally initiated a physical confrontation with Flaherty. In defense of himself and Flaherty, Stieh stabbed Conneally three times.
 

 At trial, the State did not contest that the victim was significantly larger in stature than Stieh — at 5 feet 5 inches tall and 130 pounds — and Flaherty — at 5 feet 7 inches tall and 160 pounds. It was also uncontested that the victim was demeaning, demanding, and aggressive during the
 
 *277
 
 sexual encounter prior to the stabbing. Finally, of the four people directly involved in the incident, only the victim testified that he was not angry upon his return to the hotel. The other three testified that the victim was angry and that he forced entry into Stieh’s hotel room. The victim, however, testified that he only became angry upon finding the wallets under a trash can outside of the hotel room. Thus, there was a consensus among the parties and witnesses that the victim either arrived angry and looking for a confrontation or became angry and confrontational after locating the wallets that appeared as though they had been intentionally hidden.
 

 The victim testified that while he and Flaherty were standing outside of the room, he found the wallets under a trash can. He became angry and shoved Flah-erty back inside the hotel room. The two fought, the victim shoving Flaherty, and Flaherty punching the victim. At some point during the skirmish, the victim realized he was bleeding and left the hotel room. The victim did not testify to a physical altercation with Stieh and did not recall being stabbed.
 

 After the altercation and stabbing, two law enforcement officers arrived on the scene and interviewed Stieh and Flaherty. Both officers testified that Stieh admitted stabbing the victim. Officer Murray stated that Stieh told him he was scared and thought the victim was going to hurt Flah-erty. Stieh also told the officer the victim was “off the chain.” Officer Stewart testified Stieh told him that he had left the room after the victim and the victim’s girlfriend returned to look for the wallets and that when he returned to the room, the victim was attacking Flaherty. Stieh then told the officer that the victim charged him, that he told the victim to “get back,” that the victim charged again, and that Stieh stabbed him.
 

 The defense presented the testimony of several witnesses, including the victim’s girlfriend, Flaherty, and Stieh. Conneally’s girlfriend testified that the victim was angry and yelling when they returned to the hotel. She stated the victim punched and shoved both Flaherty and Stieh. Although she did not see the actual stabbing, she testified she did see the victim and Stieh standing face to face.
 

 Flaherty testified the victim was screaming that he was going to kill both Stieh and Flaherty for stealing the wallets. He stated the victim attacked him and dragged him from his bed. Flaherty yelled for Stieh’s help, and Stieh attempted to separate the victim and Flaherty. According to Flaherty, the victim then threw Stieh around the room and up against the door. At some point, the victim forced Stieh out of the room, and Flaherty did not see the stabbing.
 

 Stieh testified the victim returned to the hotel screaming and threatening to kill Stieh. He confirmed Flaherty’s account of the events, adding that he attempted to leave the hotel room but was caught by the victim and they exited the room together. Stieh testified that upon seeing the wallets in the hallway, the victim yelled that he was going to kill them. Stieh again tried to escape, this time back into the room, but the victim caught him. The victim attempted to punch Stieh, and Stieh picked up a knife from the dresser and stabbed the victim. Stieh testified he was scared for his life.
 

 After the defense rested, counsel for Stieh moved for judgment of acquittal on the basis that the State had failed to rebut Stieh’s theory of self-defense. In rebuttal, the State recalled officers Murray and Stewart. Both officers testified that during their respective interviews with Stieh and Flaherty, neither man claimed the victim threatened to kill them. Offi
 
 *278
 
 cer Stewart reiterated that Stieh told him the victim had been attacking Flaherty. The trial court again denied the motion, finding that the testimony was conflicting and that the issue was best left for the jury to determine.
 

 This court reviews the denial of a motion for judgment of acquittal under a de novo standard.
 
 Behanna v. State,
 
 985 So.2d 550, 555 (Fla. 2d DCA 2007). Although the question of whether a defendant acted in justifiable self-defense is generally a question for the jury, “[w]hen the defense presents a prima facie case of self-defense, the State has the burden to prove beyond a reasonable doubt that the defendant did not act in self-defense.”
 
 Id.
 
 (citing
 
 Fowler v. State,
 
 921 So.2d 708, 711 (Fla. 2d DCA 2006)). The State may meet its burden through rebuttal witnesses or by inference in its case-in-chief.
 
 Jenkins v. State,
 
 942 So.2d 910, 914 (Fla. 2d DCA 2006). However, “[i]f the State fails to sustain this burden of proof, the trial court is duty-bound to grant a judgment of acquittal in favor of the defendant.”
 
 Id.
 
 (citing
 
 State v. Rivera,
 
 719 So.2d 335, 337 (Fla. 5th DCA 1998)).
 

 Stieh testified that he acted in self-defense and in defense of Flaherty. Flaherty’s testimony corroborated Stieh’s testimony, as did the testimony of two of the State’s witnesses. Stieh presented a pri-ma facie case of self-defense.
 

 The applicable self-defense statute is section 776.013(3), Florida Statutes (2007), which states:
 

 A person who is not engaged in an unlawful activity and who is attacked in any other place where he or she has a right to be has no duty to retreat and has the right to stand his or her ground and meet force with force, including deadly force if he or she reasonably believes it is necessary to do so to prevent death or great bodily harm to himself or herself or another or to prevent the commission of a forcible felony.
 

 The statutory presumption that a defendant has a reasonable fear of great bodily harm sufficient to justify the use of deadly force applies when
 

 [t]he person against whom the defensive force was used was in the process of unlawfully and forcefully entering, or had unlawfully and forcibly entered, a dwelling, residence, or occupied vehicle, or if that person had removed or was attempting to remove another against that person’s will from the dwelling, residence, or occupied vehicle.
 

 § 776.013(l)(a).
 

 Here, Stieh had a right to be in the hotel room as he had lawfully rented the room for the night. The room qualified as a dwelling or residence for purposes of section 776.013.
 
 [1]
 
 Only one witness, the victim, testified that he did not forcibly enter the hotel room in search of the wallets. Further, three of the -witnesses testified the victim forcibly removed the appellant from the room at one point during the altercation. Thus, it appears the presumption in section 776.013(l)(a) applies to Stieh. The State’s only rebuttal testimony corroborated that the victim was the aggressor and failed to rebut this presumption.
 
 See Hernandez Ramos v. State,
 
 496 So.2d 837, 838 (Fla. 2d DCA 1986).
 

 
 *279
 
 However, even if the presumption does not apply, the court erred in denying Stieh’s motion. The State failed to present evidence legally sufficient to overcome Stieh’s theory of self-defense. In fact, two of the State’s witnesses corroborated Stieh’s theory by testifying that immediately after the stabbing, Stieh told them he was acting in defense of Flaherty. Defense of another is permitted under section 776.013(B).
 

 It was the State’s burden to overcome Stieh’s theory of self-defense and prove beyond a reasonable doubt that Stieh was not acting lawfully when he stabbed the victim.
 
 See Behanna,
 
 985 So.2d at 555. As noted by this court in
 
 Jenkins,
 
 “self-defense cases are intensely fact-specific.” 942 So.2d at 916. But where the evidence “ ‘leaves room for two or more inferences of fact, at least one of which is consistent with the defendant’s hypothesis of innocence, [it] is not legally sufficient to make a case for the jury.’”
 
 Fowler,
 
 921 So.2d at 712 (quoting
 
 Fowler v. State,
 
 492 So.2d 1344, 1348 (Fla. 1st DCA1986)).
 

 Here, although there was conflict among the testimony of the victim, Flaherty, the victim’s girlfriend, and Stieh, the conflict was relatively minor and did not rebut or otherwise foreclose Stieh’s theory of innocence. Therefore, the trial court should have granted Stieh’s motion for judgment of acquittal.
 

 Reversed and remanded for discharge.
 

 NORTHCUTT and DAVIS,
 
 33.,
 
 Concur.
 

 [1]
 

 . Section 776.013(5)(a) defines a dwelling as "a building or conveyance of any kind, including any attached porch, whether the building or conveyance is temporary or permanent, mobile or immobile, which has a roof over it, including a tent, and is designed to be occupied by people lodging therein at night." A residence is defined as "a dwelling in which a person resides either temporarily or permanently or is visiting as an invited guest.” § 776.013(5)(b).